[S. F. No. 139. In Bank.—January 4, 1898.]

C. B. RODE et al., Appellants, v. JOHN D. SIEBE, Assessor, etc.,. Respondent.

TAXATION—ASSESSMENT OF PERSONAL PROPERTY—COLLECTION BY ASSESSOR—
—VALIDITY OF STATUTE—CONSTITUTIONAL LAW.—The statute requiring the assessor to collect the taxes assessed upon personal property at the time of the assessment, upon the basis of the levy of the previous year, where the taxes are not secured by lien upon real estate, with a provision for remission of any excess in the levy, is constitutional and valid, and neither conflicts with article XIII of the constitution, requiring property to be taxed in proportion to its value, to be ascertained as provided by law, nor with subdivision 10 of section 25 of article IV, which prohibits the legislature from passing local or special laws for the assessment or collection of taxes. [Van Fleet, J., and Harrison, J., dissenting.]

ID.—HARDSHIP NOT TO BE CONSIDERED.—The fact that a law may work hardship in extreme cases cannot be considered in determining its validity.

ID.—SPECIAL LEGISLATION—GENERAL LAW—CLASSIFICATION — SECURED AND UNSECURED TAXES.—The distinction between secured and unsecured taxes is intrinsic, and justifies a classification based thereupon; and a law providing for the collection of unsecured taxes upon personal prop-

erty at a different time and in a different manner from the collection of taxes upon personal property which are secured by lien upon real estate, is general and uniform in its operation, and is not a special law for the collection of taxes within the meaning of the constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edward A. Belcher, Judge.

The facts are stated in the opinion of the court.

Walter H. Levy, for Appellants.

Naphtaly, Friedenrich & Ackerman, W. F. Fitzgerald, Attorney General, and W. H. Anderson, Assistant Attorney General, for Respondent.

BEATTY, C. J.—The defendant is assessor of the city and county of San Francisco. The plaintiffs are residents of San Francisco, and in March, 1895, in response to defendant's demand, made a return showing that they were owners of personal property in said city and county subject to taxation for the ensuing fiscal year, but owned no real property. The defendant assessed their personal property, and on May 20, 1895, demanded payment of the tax, amounting, at the rate of the tax levy for the previous year, to seventy-one dollars and seventy-three cents, and threatened, in case of their refusal to pay, to seize and sell enough of said property to make the amount due. To restrain such threatened seizure and sale this action was begun. The superior court denied the injunction and plaintiffs appeal.

It is conceded that the proceedings of the assessor were sanctioned by the express provisions of the statute, but it is contended that a statute which authorizes the collection of taxes on personal property not secured by lien on real property, before equalization, before levy for the year and before the beginning of the fiscal year to which they belong, is unconstitutional in those particulars, and to that extent unenforceable.

The specific objection to the law is that it violates the constitutional requirement as to uniformity of all general laws, and especially of laws relating to taxation.

It will not be necessary, in order to indicate the position of appellants, to cite the various sections of our revenue law to which

reference has been made in the argument. It is sufficient to say that under the constitution and laws of California the fiscal year begins on the 1st of July and ends on the 30th of June. The taxes for each fiscal year accrue on the first Monday in March preceding its commencement, and become a lien from that date upon the real property of the respective tax payers. Where the real property of a tax payer is sufficient to secure the payment of all his taxes upon his personal property, as well as upon the realty itself, he is not required to pay the tax before the end of November; prior to which time the board of supervisors first, and the state board of equalization afterward, equalize the assessments, and then establish the rates for state and county purposes, according to which the tax is to be levied. But where a tax payer has no real property, or none sufficient to secure the payment of his taxes, the assessor is required to collect them at the time of making his assessment, and in case of failure to pay to sell sufficient of the property of the delinquent to make the amount of the tax with costs. As this collection must be enforced before the meeting of either board of equalization and before the rate for the ensuing year is ascertained and the levy made, it is provided that it shall be made according to the rate levied the previous year, and as this may be, and generally is, greater or less than the subsequent levy for the current year, provision is made for refunding to the tax payer any excess in the collection, and for the payment by him of any deficiency.

It is of course undeniable that the citizen who by the provisions of this law is compelled to pay his taxes six months sooner than others are required to pay on the same kind of property is under the disadvantage of being deprived of the use of his money for a longer period than other owners of personal property, and it is easy to put extreme cases—as counsel have done—in which real hardship would result. But it would be equally easy to imagine extreme cases in which honest tax payers, whose taxes are perfectly secured by lien upon their real property, would suffer great injustice by the removal of personal property from the jurisdiction between the 1st of March, when taxes accrue, and the end of November, when secured taxes become delinquent. The validity of a law is not to be tested, however, by its application to extreme cases involving the assumption of grossly arbitrary violation of their duties by public officers. If every law were de-

clared unconstitutional which by the application of such a test could be shown capable of working injustice, we should have very few laws left.

As to the actual working of this particular law, we know that it has been in operation in this state, outside of San Francisco, for almost forty years, and that its validity has never before been drawn in question. This could scarcely have happened if its operation was oppressive or unjust.

These arguments, therefore, must be put aside, and the law considered with reference to the different clauses of the constitution which it is supposed to violate.

1. It is said to violate section 1 of article XIII, which provides that: "All property in the state not exempt under the laws of the United States shall be taxed in proportion to its value to be ascertained as provided by law."

There is nothing in the revenue law which is inconsistent with this provision, unless it is the requirement that unsecured taxes must be paid at the time of assessment, thereby causing the tax payer to lose the use of his money longer than other tax payers do. As to the right of equalization, that is not taken away by a previous collection of the tax; and if the assessment is reduced by either board of equalization, the excess over the true amount of the tax is refunded. The same is true as to the rate. If the levy for the previous year is larger than the levy for the current year the excess is refunded. In the end all tax payers are taxed uniformly upon their duly equalized assessments, and it remains only to inquire whether there is such an intrinsic difference between secured and unsecured taxes as to justify the legislature in making different regulations as to the time of their collection.

The clause of the constitution which is supposed to preclude such a difference of regulation is subdivision 10 of section 25 of article IV, which prohibits the legislature from passing local or special laws for the assessment or collection of taxes.

This law is not a local law, and it is not special if the classification which it makes is based upon intrinsic differences requiring different regulations.

That there is such intrinsic difference between secured and unsecured taxes seems to me self-evident. The object of the constitution is to make the burdens of taxation equal in proportion to

the value of all taxable property. To accomplish this object, it is not only necessary that assessments should be duly made and equalized, and the rate levied uniformly, but measures must be taken to secure the collection from all alike. The law imposes upon real estate a lien dating from the first Monday in March of every year for all taxes levied upon the owner for the ensuing fiscal year. It makes such taxes perfectly secure by a lien upon immovable property, and the burden of this lien is in many instances an inconvenience and disadvantage to the owner. If the owner of personal property has no real property to secure the payment of his taxes, must the state leave him for more than six months at liberty to remove himself and his property without its jurisdiction, and risk the loss of the tax altogether, to the prejudice of those whose taxes are secured? Either it must do so or it may collect the tax at once, or take the property into its possession and thus secure the only lien to which personal property may be subjected. These considerations make it clear that there is a difference between secured and unsecured taxes which justifies the classification which the legislature has made, and leaves the law entirely free from objection on the ground that it is not general and uniform.

The other objections stated by counsel have not been pressed, and we think them wholly without merit.

Judgment affirmed.

Henshaw, J., Temple, J., Garoutte, J., and McFarland, J., concurred.

VAN FLEET, J., dissenting.—I dissent. In my judgment, the provisions of the act in question clearly violate the constitutional rule that "all property shall be taxed in proportion to its value." (Const., art. XIII, sec. 1.) This provision is not satisfied by an equal assessment merely. Taxation consists in the payment of taxes, and if the operation of the statute is such as to make one person or one kind of property pay more in proportion to value than other persons or property, such a statute must be void.

Under the operation of this law, the owner of personal property not owning any real estate is forced to pay his tax many months, perhaps nearly a year, before those owning real estate are required to pay their taxes on personal property. He is, there-

fore, compelled to lose the interest on his money for that time. Obviously, the state has no more right to deprive a man of the use of his money than it has to deprive him of the money itself. The result is, that he has to pay more than others on the same valuation—the difference being measured by the value of the use of the money during the period in which the others are not required to pay.

This constitutional rule is further violated by this legislation because the "value" in proportion to which the taxation is to be laid is "to be ascertained as provided by law," and such ascertainment has not been completed when the tax is required to be paid. The provisions of the statute concerning equalization make no exception as to any kind of property, and none could constitutionally be made. (Const., art. IV, sec. 25, subds. 10, 33.) The right of any tax payer to have his assessment reduced, if too high, is therefore perfect; and until the opportunity therefor has been afforded the tax payer, the value has not been "ascertained as provided by law." In any particular case the assessment of personal property made by the assessor may be, and not infrequently is, much too high, and is reduced by the board of equalization; yet the owner, if not also owning real property, is compelled to pay a tax based on this excessive valuation. He is, therefore, taxed in excess of his proportionate amount.

It is said that the excess, if any, will be ultimately returned to the tax payer; but this is no answer. For, first, he is deprived of the use of the money which the state has thus unjustly taken from him, and loses the interest thereon. Moreover (and this is no light consideration), a person who could pay the proper amount of tax may be wholly unable to pay the excessive amount thus demanded, and is, therefore, forced either to sell his property on the spot, perhaps at a ruinous sacrifice, or to submit to a seizure and sale by the assessor at still greater loss aggravated by penalties and costs. By this process he is certainly taxed in effect at a higher rate than other persons, and the statute as to him has not a uniform operation.

The system provided by these provisions is also open to the similar objection that the property owner is required to pay his tax before even the rate of taxation has been ascertained. He is required to pay on the basis of the levy for the preceding year; and while this may be lower than the rate which may be levied

for the current year, it may also be much higher. In the latter case the tax payer is required to pay to the state a sum in excess of his proportionate share, and he is deprived of the use of the money represented by such excess for many months, and in many cases is compelled to resort to onerous, and for a poor man expensive, proceedings to collect it.

It is contended that this legislation is based on a classification which the legislature is competent to make. But, if this were so, it would not help the case. The legislature has no power by any process of classification to tax any person or any kind of property, except in proportion to the value of the property.

But the supposed classification is in itself arbitrary and invalid. Personal property might be said to constitute a class, as distinguished from real property, and the legislature might perhaps make such differences in the rules for the taxation of these different classes as should legitimately follow from the inherent difference between them. But the classification here attempted is not based upon any difference in the property itself, or even in its situation. What has been undertaken is to prescribe one rule for the taxation of personal property when owned by one person, and a different rule for the taxation of precisely similar property when owned by another person. Such a classification the legislature has no power to make. (*Pasadena v. Stimson*, 91 Cal. 238, 251; *Ex parte Frank*, 52 Cal. 608; 28 Am. Rep. 642.)

It is said that unless some such distinction be made much property will escape taxation. This, if true, would not entitle the legislature to overstep its constitutional power. But the suggestion is not necessarily true. It would be quite possible to frame a system operating equally upon all, in which no such result would necessarily follow; and, in fact, for more than thirty years such a system prevailed in San Francisco, and it was never claimed, so far as I am aware, that personal property taxes were not collected as closely there as in the other counties of the state.

It is also said that this system has been substantially in force in this state since a very early period, and that there is, therefore, a strong presumption of its constitutionality. It must be remembered, however, that during the greater portion of the time it was not in force in the city and county of San Francisco, wherein a very large proportion of all the taxes are paid. This

system presses most heavily on the poor—the class which is the least able to undertake legal contests—and by far the greater proportion of the poor are in a large city like San Francisco. In the interior counties the number of persons coming under the operation of this law is very small. Most of them are too poor to resist the law, and others have been restrained perhaps by the sentiment that it is not patriotic to refuse to pay taxes. Under such circumstances, the fact that the question has not previously been mooted can have no great force.

This whole system, it seems to me, presents an instance of the most vicious kind of discrimination known to the law—a discrimination against the poor. It would be much better, if such a thing were necessary, that the state should lose some small portion of its revenue than that it should wring it by questionable means out of those least able either to endure or to resist such exactions. For this reason, if for no other, it is the duty of courts to jealously scrutinize such a discriminating system, and to unhesitatingly condemn it unless a clear constitutional warrant for its exercise be made to appear. In my judgment no such warrant can be found under the constitution of this state.

I think the judgment should be reversed.

HARRISON, J., dissenting.—I also dissent from the judgment of the majority of the court upon the following considerations, as well as for the reasons expressed in the opinion of Mr. Justice Van Fleet:

The provisions of sections 3820-3824 of the Political Code are, in my opinion, totally at variance with the constitutional rights of the citizen. By these sections the assessor is authorized to assess and summarily sell the property of any person "when in his opinion" the person does not own sufficient real property within the county to secure the payment of his taxes. Under this provision, an assessor has the unrestricted power to exercise favoritism or antagonism toward the person to be assessed. It does not affect the principle whether the power is so exercised or not —the fact that it may be used as a cover to an unfair assessment is the test of the right of the legislature to confer the power. Under the principles of the constitution of this state, the sovereign power of taxation cannot be instrusted to the arbitrary will of any individual; and it is equally immaterial to the question

that the person assessed may subsequently obtain redress for any abuse of this power. The state can by this mode no more deprive the citizen of his property for six months than it can take it from him entirely. In either case his property is taken without due process of law. Under the authority thus given, one's property, which in reality is not of greater value than five hundred dollars, may be assessed at five thousand dollars, and the very property so assessed taken from the owner and summarily sold at a forced sale, where as it is well known its value is never realized, and the surplus, after deducting the taxes and costs, returned to the owner. It is poor satisfaction to him that months afterward the assessment is reduced by the board of equalization to its actual value, and that still later he may recover from the county the difference between what should have been his taxes and what the assessor took at the sale of his property. I have no hesitation in holding that such a procedure is contrary to the principles of free government.