STUMPF v. STORZ.

1. TAXATION—MORTGAGES — CONSTITUTIONAL LAW—DOUBLE TAXATION.

The taxation of a mortgage upon real estate, in addition to the tax imposed upon the land itself, is not in violation of the constitutional requirement of uniformity in taxation, even if, under the terms of the mortgage, the mortgagor assumes the payment of both; since the payment of the mortgage tax is not a burden imposed by the State, but grows out of a contract voluntarily entered into, which is subject to the restrictions imposed by the statute relating to usury.[1]

2. SAME — STATUTES — CONSTITUTIONAL LAW— EXEMPTIONS — DEDUCTING DEBITS FROM CREDITS.

The law permitting a creditor, in listing his personal property for taxation, to deduct the amount of any indebtedness owing by him is not in violation of the constitutional requirement of uniformity; nor is such deduction an exemption within

[1] Taxation of mortgage as double taxation, see note to *Common Council of Detroit* v. *Rentz* (Mich.), 16 L. R. A. 60.

the meaning of constitutional and statutory provisions as to exemptions from taxation.

3. CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION.

The fact that the statute permitting the deduction of debits from credits, in listing personal property for taxation, has been in force during the entire history of the State, should not deter the court from determining its invalidity if convinced that such law was beyond the legislative power.

4. TAXATION—UNIFORMITY—UNEQUAL RESULTS—EFFECT.

Taxation is not invalid because of unequal results in individual instances, since, under such construction, taxation would become impossible and governments must fall back upon arbitrary exactions.

Certiorari to Oakland; Smith, J. Submitted February 11, 1909. (Docket No. 162.) Decided April 6, 1909.

Mandamus by Jacob Stumpf to compel Louis Storz, supervisor, and Henry N. Lavery and John Benjamin, members of the board of review of the township of Royal Oak, the Michigan Bankers' Association, and others, to strike from the tax roll an assessment against certain personal property. There was an order denying the writ, and relator brings certiorari. Affirmed.

*Fred A. Baker*, for relator.

*Hal. H. Smith*, for respondent Michigan Bankers' Association.

MONTGOMERY, J. This is a petition for a mandamus requiring the board of review of the township of Royal Oak to reconvene and strike from the assessment roll of the township for 1908 a personal property assessment against the relator of $9,000; that being the value placed by the board on certain mortgages upon real estate and land contracts held by the relator. The object of the petition is to test the constitutional validity of the provisions of the general tax law relative to the taxation of real estate mortgages and other credits. The briefs of relator and respondents show that no effort has been spared to

place before the court all the learning obtainable upon the subjects presented, and, if we omit to refer to and discuss all the authorities cited, it is not through any want of appreciation for their aid in the final solution of the questions, or because they have not had full attention by the court.   To attempt to cite the authorities bearing upon each of the propositions contended for, and to discuss and distinguish the cases, would extend the opinion beyond reasonable limits.   We shall content ourselves with stating the result of our investigations, and with referring to such cases as we think should be considered controlling.

The sections of the Constitution bearing upon the subject are sections 11 and 12 of article 14, which read as follows:

"SEC. 11. The legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law.

"SEC. 12. All assessments hereafter authorized shall be on property at its cash value."

It is strenuously insisted that the taxation of mortgages upon real estate, in addition to the taxation of the real estate itself at its full value, is double taxation, and, as such, unconstitutional.   It is conceded that the practice has been to tax credits as personal property ever since the organization of the State government in 1838, and it must also be conceded that the decisions of this court have recognized the constitutionality and validity of these statutes. In the case of *Attorney General* v. *Board of Sup'rs of Sanilac Co.*, 71 Mich. 16, Chief Justice SHERWOOD said:

"Mortgages are nowhere excepted out of the taxable property.   It was evidently the intention of the legislature, under our tax laws as they now are, to make personal property bear its just proportion of the burdens of taxation, and I find no constitutional objection to this being done.   *   *   *   I know of no reason why property in real estate mortgages cannot be assessed at its cash value as well as any other personal property.   Such property is very largely dealt in by nearly all classes of business men,

and the various kinds have a rated value according to the extent of the security and personal responsibility of the party whose obligation is secured, if any; and I know of no reason why the assessing officer may not as well ascertain that value as any other business man.    *    *    *    The claim that double taxation cannot be avoided under the act cannot be sustained.    *    *    *    In order to have double taxation, the same property must be taxed twice, when it should be taxed but once.    The law of 1887 creates no such injustice.    When an indebtedness is secured by mortgage on real estate, and the mortgage becomes property more valuable and desirable than the land itself, there is not, nor can be, any good reason why the mortgage should not be taxed to assist in bearing the public burden; and any course of reasoning which would exempt the property in the mortgage, and make the land bear the burden of taxation which should be shared by the holder of the mortgage, would not only be unequal and unjust, but would, I think, be getting about as near double taxation as can be reached without having it pure and simple."

Justice CHAMPLIN, concurring in this view, said:

"I think it is competent for the legislature to assess and tax securities representing values.    Whether it is the best plan to adopt, or whether it is expedient to do so, is not a judicial, but a political, question, resting solely with the legislature."

The question was again before the court in *City of Marquette* v. *Land Co.*, 132 Mich. 130, in which this same contention was made, that a tax on both the property contracted to be sold and on the credit in question was such a double taxation as to violate the constitutional provision requiring uniformity.    That case was a case of a land contract, but the principle is the same as in the case of a mortgage security.    It was said by Mr. Justice CARPENTER:

"It is to be noted that in this case the obligation to pay the taxes upon the property rests, not upon the vendor, but upon the vendees.    Therefore the argument advanced in support of this contention is precisely the argument which has been advanced to prove that the taxation of credits secured by mortgage and of the land covered by

the mortgage is unconstitutional. The decision of this court upholding the constitutionality of such taxation (*Attorney General* v. *Board of Sup'rs of Sanilac Co.*, 71 Mich. 16) is controlling and decisive of this question."

We are asked to reconsider these cases, although it may be said that they have the support of many decided cases in other jurisdictions.

But it is urged that in practice the mortgagor pays the tax both upon the real estate and upon the mortgage, and that, therefore, he is subjected to double taxation. The answer is that this may or may not be true, and that, whenever the mortgagor does pay the tax upon the mortgage, it is not because it is a burden imposed upon him by the State, but because of a contract that he has voluntarily entered into, and this contract is subject to restrictions imposed by the usury laws. See *Green* v. *Grant*, 134 Mich. 462. As bearing on the general question, see *Paddell* v. *City of New York*, 187 N. Y. 552, 211 U. S. 446.

It is next urged that the law permitting a creditor in listing his property for taxation to deduct the amount of any indebtedness owing by him is unconstitutional as being in violation of the constitutional requirement of uniformity; the claim being that the Constitution of Michigan does not make the net assets of persons or corporations the basis of taxation, but, on the contrary, provides that all general taxation must be on property according to its cash value, and it is urged with much force that the credits of which one is possessed constitute property, and that, this being so, it would be subject to taxation as property, and that any provision for deducting the indebtedness of the owner is in effect an exemption of so much of his property from taxation.

The case of *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 1, is relied upon to sustain this contention. The majority opinion of the court in that case did sustain the contention, and that opinion has been followed by the supreme court of South Dakota in the case *In re Assess-*

*ment and Collection of Taxes,* 4 S. Dak. 6. The constitution of Ohio of 1851 (article 12, § 2) provided that "laws shall be passed, taxing, by a uniform rule, all moneys, credits," etc., and it was in construing this constitutional provision that the rule in *Exchange Bank of Columbus* v. *Hines* was laid down. Soon after this decision, however, the legislature of Ohio enacted a statute which declared that the term "credit" meant the excess of the sum of all legal claims and demands over and above the sum of legal and bona fide debts owing by such person. In *Hubbard* v. *Brush,* 61 Ohio St. 252, the supreme court of Ohio said of this legislation that it had been acquiesced in for more than 40 years, and that *Exchange Bank of Columbus* v. *Hines,* in so far as it denied the right to deduct liabilities from claims and demands, has been ignored. The court said:

"The word 'credits,' in the connection in which it is used in the constitution, is not made at all clear by a resort to the lexicographers. It is apparent, however, that if the framers of the constitution had intended to specifically tax book accounts, promissory notes, and the like, it would only have required the addition of a few words, not at all incompatible with the brevity required in such instruments, to manifest that intention. The ease with which it could have been done gives to the omission a signification entitled to some consideration. * * * The difficulties, however, attending a deduction of liabilities from claims and demands, have not proved formidable since the practice was authorized by the legislature, and the practice itself has received general approbation. For these considerations, not to specify others, we are of opinion that the legislative declaration is in accord with the constitution, and therefore hold that the corporation involved in this controversy rightfully in listing its property for taxation deducted its liabilities from its claims and demands."

The result of this opinion was that the term "credits," as used in the constitution, might be held to mean the net credits. The same ruling was made by the supreme court of Nebraska in *County of Lancaster* v. *McDonald,*

73 Neb. 453. In the case of *Florer* v. *Sheridan*, 137 Ind. 28 (23 L. R. A. 278), the conclusion was reached that the true value of the taxpayer's credits was the balance due after deducting the debts. The case upon this point is well reasoned, and, we think, states the correct rule. See, also, *State* v. *Moffett*, 64 Minn. 292, and *State* v. *Railway Co.*, 95 Minn. 43, and, for a general discussion, Gray on Limitations of Taxing Power, § 1395 et seq. Since the adoption of the Constitution, and, indeed, before, every tax law in the State has authorized the deduction of debits from credits in listing personal property for taxation, and, while the court has never been directly called upon to pass upon this question, the propriety of such legislation has been recognized in *First Nat. Bank of St. Joseph* v. *Township of St. Joseph*, 46 Mich. 526, and *Beecher* v. *Common Council of Detroit*, 110 Mich. 456.

It is urged that the fact that the practice of deducting debts from credits has so long continued should not deter the court from declaring the law unconstitutional if convinced that it is beyond the legislative power. This statement of the duty of the court is undoubtedly correct. See *Pingree* v. *Auditor General*, 120 Mich. 95 (44 L. R. A. 679). But the fact that such statute has remained upon the statute books for over 70 years, and that the practice has continued from the formation of the State to the present time, does call upon the court to move with the utmost caution in asserting its invalidity. We are not convinced that the reasoning of the courts in the cases cited above from other jurisdictions is unsound, and are disposed to follow them. As to the further contentions of relator's counsel, the language of Judge COOLEY (1 Cooley on Taxation [3d Ed.], p. 389), quoted with approval by this court in *Common Council of the City of Detroit* v. *Board of Assessors*, 91 Mich. 78 (16 L. R. A. 59), is peculiarly appropriate:

"Now, whether there is injustice in the taxation in every instance in which it can be shown that an individ-

ual who has been directly taxed his due proportion is also compelled indirectly to contribute, is a question we have no occasion to discuss. It is sufficient for our purposes to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid because of any such unequal results. It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and, if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions."

The order of the circuit court dismissing the petition is affirmed, with costs.

GRANT, HOOKER, OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred. BLAIR, C. J., did not sit