HARPER CREEK SCHOOL DISTRICT v LeROY TOWNSHIP
SUPERVISOR

Docket Nos. 79542, 79543. Submitted July 9, 1985, at Grand Rapids.—
Decided October 21, 1985. Leave to appeal applied for.

Plaintiff, Harper Creek School District, passed a resolution for
the collection of summer property taxes upon property in the
district. The townships within the district each did the actual
collecting in 1983, but in 1984 a disagreement arose in regard
to the amount of expenses to be paid to the townships for their
costs of collection. The school board advised the supervisors of
LeRoy, Emmett, and Newton Townships of the district's intent
to collect the 1984 summer taxes. When LeRoy Township
refused to deliver a copy of the assessment roll plaintiff brought
a complaint for mandamus against the various township offi-
cers, seeking to compel delivery of the assessment roll. The
Calhoun Circuit Court, James C. Kingsley, J., denied plaintiff's
request. Plaintiff thereafter filed a complaint for mandamus
against the officers of Emmett and Newton Townships, seeking
an order compelling those townships to collect the summer tax.
Plaintiff also sought to have the judgment in the LeRoy Town-
ship case amended. The cases were consolidated, the plaintiff's
requests were denied, and the plaintiffs appealed and the
defendants cross-appealed. The appeals were consolidated by
the Court of Appeals. Plaintiff asserts on appeal that the trial
court erred in holding that formal action by a school board is
required prior to January 1 of any year in which a summer tax
collection is to be sought and that a letter to LeRoy Township
from the school superintendent indicating that a summer tax
collection would be sought was not sufficient to invoke the
collection of the summer tax. The defendants allege that the
trial court erred in holding that MCL 380.1613, which is the
legislation providing the mechanism by which school districts

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Statutes §§ 145, 146.
[2-4] Am Jur 2d, Schools §§ 78-84.
  Am Jur 2d, State and Local Taxation §§ 194, 201-211.
  See the annotations in the ALR3d/4th Quick Index under Schools;
  State Taxes.
[5] Am Jur 2d, State and Local Taxation §§ 150 *et seq.*

may request the summer tax collection, does not violate the constitutional requirement of uniformity of taxation and that a township, by way of a resolution passed prior to January 1, 1983, could not place itself in the position of exclusive tax collection agent. *Held:*

1. MCL 380.1613 requires a school board to adopt a resolution of its intent to impose a summer tax, which resolution remains applicable until revoked by the board. The board must thereafter request the cities and townships involved to collect the tax and the request must be made before January 1, of any year in which the summer tax collection is sought. The trial court properly held that formal action by the board was required prior to January 1.

2. In the case of LeRoy Township, the school superintendent's letter in November, 1983, was not sufficient to invoke the school board's resolution for collection of summer taxes in 1984. The formal request must come from the board itself. The trial court correctly held that plaintiff's formal request to LeRoy Township, in April, 1984, was not timely.

3. The statute does not permit a township to become the exclusive summer tax collection agent by having passed a resolution prior to January 1, 1983. Such an interpretation was not the intent of the Legislature. The trial court did not err on this issue.

4. The statute does not violate the requirement of uniformity of taxation. The requirement is for uniformity of rates and assessments, not for time of collection. To the extent that some inequalities result from the collection of a summer tax in some localities they are not grounds for finding the statute invalid.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

It is the duty of courts to enforce unambiguous statutes as written, in accordance with the plain intent of the Legislature.

2. SCHOOLS — TAXATION — SUMMER TAXES.

A school district which desires to have the cities and townships within which the district lies collect a summer property tax must first adopt a resolution to that effect which remains applicable until revoked by the school board and, second, to invoke the adopted resolution a request to each of the cities and townships to collect the summer tax must be made before January 1 of each year (MCL 308.1613[1]; MSA 15.41613[1]).

3. SCHOOLS — TAXATION — SUMMER TAXES — TOWNSHIPS.

A request by a school district that a township collect a summer

property tax must be a formal action by the school board; a letter from a school superintendent indicating that the district intended to continue the collection of summer taxes did not suffice to trigger a school board's resolution concerning the summer taxes (MCL 380.1613[1]; MSA 15.41613[1]).

4. SCHOOLS — TAXATION — SUMMER TAXES.

The statute providing authority for a school district to collect a summer property tax or to request a city or township to collect such taxes did not provide that a township could, by a resolution prior to January 1, 1983, establish itself as the exclusive tax collection agent (MCL 380.1611-380.1613; MSA 15.41611-15.41613).

5. TAXATION — UNIFORMITY OF TAXATION — TIME OF TAX COLLECTION.

The constitutional requirement of uniformity of taxation is concerned with uniformity of rates of assessments; there is no requirement of uniformity in the time of collection of the same tax at the same level of assessment (Const 1963, art 9, § 3).

*Thrun, Maatsch & Nordberg, P.C.* (by *Michael A. Eschelbach),* for plaintiff.

*Bauckham, Reed, Lang, Schaeffer, Sparks & Rolfe, P.C.* (by *Richard D. Reed),* for defendants.

Before: WAHLS, P.J., and ALLEN and J. C. RAVITZ,* JJ.

ALLEN, J. In this matter of first impression we are asked to decide, *inter alia,* whether 1982 PA 333 (MCL 380.1613; MSA 15.41613), which authorizes the levy of a summer school property tax in part of a school district's territory, constitutes a violation of the constitutional requirement of uniformity of taxation, Const 1963, art 9, § 3. The trial court held the statute constitutional but denied plaintiff's complaint for mandamus seeking delivery of the 1984 assessment rolls on grounds

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

that plaintiff had failed to follow the statutory procedures to enact the 1984 summer tax levy. Both parties have appealed. The matter comes to us on the following facts.

Acting pursuant to 1982 PA 333, which took effect December 16, 1982, plaintiff, Harper Creek School District, passed a resolution on January 10, 1983, imposing a summer property tax levy of one-half (1/2) of school property taxes upon property located within the school district, beginning with 1983 "and continuing from year to year until specifically revoked by this Board of Education". Paragraphs 3 and 4 of the resolution directed the superintendent of schools to negotiate with the governing board of each city and township within the school district for the reasonable expenses of collection of the summer tax and, if agreement is not reached, authorized the board to take such further action as is permitted under Act 333.

Each township was requested to do the actual collecting of the summer tax. The first year of summer tax collection under the resolution (1983) went without incident. The school district's summer taxes were collected by the various townships, including LeRoy Township. However, in 1984 a problem developed as to the amount of "reasonable expenses" to be paid the several townships involved for their costs of collection. By letter dated November 21, 1983, the superintendent notified LeRoy Township of the school district's intention to levy a summer tax for 1984 and on March 7, 1984, the secretary of the board of education wrote to the township supervisors of LeRoy, Emmett and Newton Townships, advising them of the school district's intention to collect a 1984 summer tax levy.

Meetings and negotiations were held concerning the collection costs. Representatives from LeRoy

Township and other units of government participated. By letter of March 14, 1984, LeRoy Township informed the school district that it would not agree to the $1.90 per parcel fee proposed by the school district but would agree to proceed with the collection provided a contract was negotiated with the school district under which the school district would pay the township's cost of collection. In 1983 LeRoy Township had charged the school district $8.07 per parcel. Emmett Township had charged $3.38 per parcel and Newton Township $5.95 per parcel.

On April 12, 1984, the Harper Creek Board of Education decided to act as its own collecting agent and collect the 1984 summer tax in the Townships of LeRoy, Emmett and Newton. LeRoy Township was notified of the costs which the district agreed to incur and alerted the township of its option under 1982 PA 333 to collect the taxes for that amount. LeRoy Township declined to exercise its option, and the school district requested a copy of the township assessment roll as provided in MCL 380.1613(7); MSA 15.41613(7). When LeRoy Township refused to deliver a certified copy of the assessment roll in due time, plaintiff school district filed a complaint for mandamus against the LeRoy Township Supervisor and Board of Trustees, seeking a court order for the delivery of the assessment roll. The LeRoy Township defendants, by way of counter-complaint, alleged that 1982 PA 333 was unconstitutional.

Following show-cause hearings the circuit court made four rulings: (1) 1982 PA 333 is constitutional and does not violate Const 1963, art 9, § 3; (2) by adoption of a resolution prior to January 1, 1983, a township did not place itself in the capacity of sole collecting agent; (3) the statute requires formal action on part of the school board prior to

January 1 of any year for it to institute the summer tax levy; and (4) the school district failed properly to follow the statutory procedures to enact the 1984 summer tax levy. The trial court therefore denied plaintiff's request for a certified copy of the assessment roll. On appeal this matter is our file number 79542.

Thereafter, plaintiff filed a complaint for mandamus against the supervisors and boards of trustees of Emmett and Newton Townships, seeking an order directing those townships to collect the summer property tax levy. Also, plaintiff brought a motion for reconsideration and amendment of the LeRoy Township judgment. The motion was denied, and the parties stipulated to a consolidation of the two cases, to a stay of judgment pending appeal, and that the issue of reasonable costs of summer tax collection by the townships would be determined by a special master. Harper Creek School District then resolved that the 1984 summer tax be levied in Newton and Emmett Townships but not in LeRoy Township, with the actual collecting to be done by the two townships involved. All parties appealed and on appeal this matter became our file number 79543. On September 18, 1984, this Court consolidated the two appeals.

On appeal Harper Creek School District, as appellant, contests the trial court's rulings (3) and (4), *supra.* Two issues are raised. Each concerns the propriety, or lack thereof, of the procedure adopted by the board in requesting 1984 summer tax collection: (I) Does 1982 PA 333 require formal annual action to trigger a school board's resolution for summer tax collection? and (II) Was the superintendent's November 21, 1983, letter a sufficient request for the 1984 summer tax collection?

Additionally, the three townships and named

supervisors and assessing officers, as defendants-appellees and cross-appellants, contest the trial court's rulings (1) and (2), *supra.* Two issues are raised: (III) Did the resolution of the several townships, adopted prior to January 1, 1983, pursuant to § 1612 of 1982 PA 333, retain each township's status as exclusive tax collection agent? and (IV) Does 1982 PA 333 violate the uniformity provision of the Michigan Constitution?

I

Section 1613(1) provides in pertinent part as follows:

"Sec. 1613. (1) By adoption of a resolution of its board before February 1, 1983, or before January 1 in any year thereafter, a school district or intermediate school district may determine to impose a summer property tax levy, *which resolution by its terms may be applicable until revoked by the board of the school district or intermediate school district* or for levies in any year specified therein. For each year such a resolution applies the school district or intermediate school district that has adopted the resolution shall request, before February 1, 1983 or before January 1 in any year thereafter, each city and township in which it is located to agree to collect the summer levy in that year of either the total or 1/2, as specified in the resolution, of the school property taxes. Notice of the meeting of the respective school district board or intermediate school district board at which this resolution will be offered for adoption shall be published by the district, not less than 6 days before holding the meeting, in a newspaper of general circulation in the school district or intermediate school district." (Emphasis supplied.)

It is plaintiff's position that, pursuant to this section, the implementation of the summer tax levy does not require annual action by the board of education. Plaintiff argues that the statute's

unambiguous language, that a resolution "by its terms may be applicable until revoked by the board of the school district or intermediate school district or for levies in any year specified therein" clearly indicates that a board of education's resolution imposing a summer property tax levy may be applicable for an indefinite term or may be applicable for the levies listed in the resolution. Defendants argue that the school board, under § 1613, must take formal action annually to enable it to become a tax collecting agent and that plaintiff board failed to follow the statutory procedures. On this issue the trial court found in favor of defendants, stating:

"Turning, finally, to the application of the provisions of the Act, I am persuaded—with due regard to Mr. Eschelbach's arguments—that the acts of the Plaintiff in this case did not meet the requirements of the statute.

"If I were to follow the argument of Mr. Eschelbach in maintaining that the adoption of a blanket resolution saying, For all time until we revoke it, we hereby are seeking the collection of taxes in the summer-that flies in the face, first, of the intent behind what I perceive to be the requirements of 1613.

"When they say: '* * * for each year such a resolution applies, the school district shall request—'

"Now, following: 'Upon receipt of the request, the governing body of the township shall negotiate the reasonable expenses of collection.'

"This strikes me as contemplating an annual, formal action by the School Board. * * *

"But I do find, as a matter of law, that the statute requires formal action on the part of the School Board prior to January 1 of any year in which the Board wishes to seek collection of taxes in the summer."

The issue is admittedly close and excellently briefed by both parties. Nevertheless, we agree with the trial court.

Standing alone, the portion of § 1613(1) emphasized above is unambiguous. Where a statute is unambiguous on its face, there is no room for statutory construction or interpretation, *Detroit v Redford Twp,* 253 Mich 453, 455; 235 NW 217 (1931). It is the duty of courts to enforce unambiguous statutes as written, *Scholten v Rhoades,* 67 Mich App 736, 745; 242 NW2d 509 (1976). Equity courts as well as law courts must apply statutes in accordance with the plain intent of the Legislature, *Lansing v Lansing Twp,* 356 Mich 641, 650; 97 NW2d 804 (1959). However, the emphasized language does not stand alone, but is qualified by the following sentence which states that "[f]or each year such a resolution applies" the school district which has adopted the resolution "shall request * * * before January 1 in any year thereafter, each city and township in which it is located to agree to collect the summer levy in that year". Clearly, this qualifying language contemplates something more than an ongoing resolution.

In short, we read § 1613(1) as meaning that in order to invoke the *adopted* resolution two steps are necessary: *first,* the school board must adopt a resolution which remains applicable until revoked by the school board; and *second,* to invoke the adopted resolution, a request must be made before January 1 (for years subsequent to 1983) to collect the summer tax levy. This construction gains credence when § 1613(9) is considered:

"(9) An agreement for the collection of a summer property tax levy between a school district or intermediate school district and a county may cover summer collections for 2 years. If an agreement covers summer collections for 2 years, the *resolution and request* required by subsection (1), the notice required by subsection (2), and the option to reconsider provided by sub-

section (3) shall not apply for summer collections in the second year." (Emphasis added.)

Plaintiff contends, however, that the legislative history reinforces its position. It argues that in two versions of House Bill 4150, the proposed legislation did not contain any requirement that a school district publish notice or hold a public hearing prior to the passing of the resolution or any provision regarding the length of time that a summer property tax resolution will be viable without further board action. But in Substitute for House Bill No. 4150, subsection 15 provides:

"(15) SUBSECTIONS (2) THROUGH (13) AND THE PUBLIC MEETING AND NOTICE REQUIREMENT OF SUBSECTION (1) SHALL APPLY FOR SUMMER PROPERTY TAX LEVIES IN 1983 OR ANY YEAR THEREAFTER."

While the notice of hearing provision was present in each subsequent version of the bill and in the statute as passed, subsection 15 disappeared from the proposed legislation. Further, the following language was added to § 1613(1), "[that a resolution] may be applicable until revoked * * * or for levies in any years specified therein". Hence, plaintiff argues that the Legislature intended to give the board flexibility in establishing a summer property tax levy in that the board could establish a levy for specific years as indicated in the resolution or could make its determination in an ongoing resolution which would be effective until revoked.

We disagree. The addition and subsequent deletion of § 1613(15) concerns the continuing viability of the board's resolution that summer taxes be collected. When subsection 15 was added the Legislature clearly intended that an annual meeting

concerning the resolution to collect summer taxes be held. The subsequent deletion of subsection 15 means only that the Legislature in its wisdom decided that an annual meeting concerning the continued viability of the resolution was not required. The deletion had nothing to do with the specific language that, for each year that the resolution applies, the school district shall request the township to agree to collect the summer levy. That provision, *viz.:* a school district's annual request to the township, was not changed. Accordingly, we affirm the trial court's interpretation of the statute as requiring an annual formal action by the school district prior to January 1 of each year for which the board intends to collect taxes in the summer.

## II

Having decided that formal action is required to trigger the school board's resolution for the 1984 summer tax collection, it remains to be determined whether the trial court erred in deciding that plaintiff had not complied with the proper procedures for requiring the 1984 summer tax levy. In this connection, it is important to note that plaintiff's own resolution, adopted January 10, 1983, prescribes the following procedure:

"2. The Secretary of this Board of Education is authorized and directed to annually forward a copy of this resolution to the governing body of each city and/or township in which this district is located, *together with . this Board of Education's request* that each such city and/or township agree to collect the summer tax levy for the ensuing year in the amount as specified in this resolution. *Such annual forwarding of this* resolution and the *request to collect the summer tax levy* shall be sent *so that they are received* by the appropriate gov-

erning bodies before February 1, 1983 *and before January 1, of each year thereafter.*" (Emphasis added.)

However, as appears from the statement of facts, heretofore recited, the secretary of the board of education made no such request until April 13, 1984, when the secretary of the board of education wrote the LeRoy Township supervisor. The only action taken prior to January 1, 1984, indicative of any intent to trigger the resolution was a letter sent November 21, 1983, from the superintendent of the plaintiff school district to the clerk of LeRoy Township informing the clerk that plaintiff school district planned to continue the collection of summer taxes for the summer of 1984.

Plaintiff contends that, although the resolution directs that requests for summer tax collection be made by the secretary of the board of education, the failure to act was a mere technicality and, further, that the superintendent acted as the board's representative and agent whose actions were subsequently ratified by the board of education. The trial court, however, disagreed on grounds that the board had failed to follow its own resolution. Again, we agree with the trial court.

In a matter as sensitive and controversial as the levy of taxes, informality of procedure should be avoided. Opponents of 1983 PA 333 fiercely argued that a summer collection of taxes customarily due in December would result in a tax increase without a vote of the people. Proponents of the bill gave assurances that sufficient qualifications and conditions precedent to such action were inserted in the bill to protect the voters. Thus, we do not believe the conditions precedent to taxation should be lightly cast aside. Instead, we believe that the statute should be construed so that the request for summer taxation should be made by the elected

board of education rather than by an administrative appointee, no matter how high that person's position.

## III

We now address the first of two issues raised by defendants as cross-appellants. Does 1982 PA 333, as finally enacted, permit a township to become the exclusive summer tax collection agent by the passage of a resolution, prior to January 1, 1983? Act 333 was introduced February 12, 1981, as House Bill 4150. During its lengthy procedure through the Legislature various versions of the bill, including substitutes, were made. At the show cause hearing in circuit court the several versions of HB 4150 were introduced as Exhibits 1 through 8. Based on these exhibits cross-appellants vigorously argue that the Legislature intended a dual mechanism for summer tax collection:

"Act 333 as finally agreed to and passed provides a choice of mechanisms for summer tax collection by a township treasurer (or city treasurer). First, certification pursuant to approval of the township board given prior to January 1, 1983. In this situation the section 1612 procedure applies which includes the right of the township to compute and bill the reasonable additional expenses of collection to the school district. Second, for those townships which did not give an approval prior to January 1, 1983, but thereafter elect or agree to collect summer taxes, then section 1613 procedures apply, which mandates the complicated prior negotiation process.

"The legislative intent expressed in the language of section 1612 of Act 333 is clear to anyone familiar with the process by which Act 333 came into existence and also clear to anyone who will examine the various versions of the house and senate bills leading to the final bill in Public Act form. Finally, the language is

clear because there is no other logical explanation for the wording of the first two sentences 1611 and 1612 of Act 333.

"These two sentences accommodate the alternative mechanisms provided for summer tax collection. Townships and cities which wished to remain exclusive agents for tax collection were required to become part of the chosen solution to the state's financial problems by approving summer tax collections before January 1, 1983. Those which did not were required to relinquish their status as exclusive tax collection agents and if they are to collect summer tax, they must elect or agree to do so pursuant to the provisions of section 1613 of the Act.

"* * * By adoption of the resolution approving summer tax collection before January 1, 1983, a city or township remains the exclusive agent for summer tax collection, otherwise it must negotiate this right with the school district. Each of the Plaintiffs in this case, as well as many other townships in the State of Michigan, did, in fact, adopt such a resolution and they are, in fact, if section 1612 of Act 333 has meaning, the exclusive agents for Harper Creek summer tax collection."

We are not persuaded. Three reasons support our position. First, the primary purpose of HB 4150 was to eliminate the veto which townships had on the collection of summer taxes for school districts. As stated in the first analysis of HB 4150 by the Senate Analysis Section:

"In addition, since some districts have had difficulty operating in the fall due to lack of revenue, the School Code provides a recourse for such districts in allowing them to petition cities and townships to collect half or all of school property taxes in the summer so that the districts can begin the school year with adequate cash resources. This remedy, however, has not always worked. Many cities readily grant requests from school districts for summer tax collection, since the code requires districts to reimburse local treasurers for the cost of collecting taxes in summer, and many populous

cities have the personnel and equipment to collect half of the school taxes in July, along with county taxes, and the other half of the school taxes in December, along with city and community college taxes. Many small cities and most townships, however, have consistently refused to collect school taxes in summer. In rural districts, for example, townships have traditionally collected all property taxes in December because farmers still have cash on hand from the sale of crops in the fall, whereas in the summer they have expended their cash to finance the year's crops and equipment. Moreover, the people responsible for assessing property and collecting taxes in townships are elected officials. Many townships levy very low millage rates, so that an extremely large proportion of local property taxes is levied by schools. Elected township officers fear that voters will blame them for summer property taxes (or tax 'increases') if they accede to the requests of districts to collect half the school taxes in July."

If a rural township, by so simple a device as the adoption of a resolution in the two-week period between the adoption of the act and January 1, 1983, could have remained as the exclusive tax collection agency, the main purpose for the bill's enactment would be thwarted. Certainly, that was not what the Legislature intended.

Second, there is no language in the statute which states that the township or city would retain its status as exclusive agent for tax collection. Surely, if that were the legislative intention, language to such effect would be included. However, no language, either directly or indirectly, so states.

Third, neither the House nor Senate bill analysis interpret the statute as finally enacted as granting a township or city exclusive tax collection status. In our opinion § 1612 and § 1613 should be read together. Section 1613 provides for delineated procedures for the summer tax collection by the school board. Sections 1612 and 1611 provide for

summer school tax collection by a school district if approved by the city or township before January 1, 1983, and also provide for tax collection if approval is not given prior to January 1, 1983, and if, pursuant to § 1613, a city or township agrees to collect the summer taxes. Accordingly, we find that the trial court did not err on this issue.

## IV

Does 1982 PA 333 violate the uniformity clause of the Michigan Constitution? Prior to the enactment of 1982 PA 333, the language in § 1612 read in relevant part as follows:

"Upon the approval of *each township board,* the board of a school district or intermediate school district may certify the total or 1/2 of the total school taxes of the district to the township clerk."

1982 PA 333 changed § 1612 to read in relevant part:

"Upon approval of *a township board* before January 1, 1983, the board of a school district or intermediate school district may certify either the total or 1/2 of the levy of school property taxes on the township portion of the school district or intermediate school district."

Cross-appellants claim that the above amendment constitutes a violation of the constitutional requirement of uniformity because it permits a levy of summer school taxes in some parts of a school district but not in other parts of the district. In the instant case, all taxpayers within the Harper Creek School District, except those living in LeRoy Township, are billed one-half of the school tax on July 1st and the remaining one-half on December 1st. Taxpayers in LeRoy Township are not billed

until December 1st. Thus, argue cross-appellants, the requirement that some taxpayers pay six months earlier than others results in favored treatment to LeRoy Township taxpayers since they retain the use of their money until December. Likewise, in LeRoy Township, penalty and deficiency assessments are imposed six months later.

We begin our analysis by noting that there is no allegation in this case that the property subject to tax has not been uniformly assessed or equalized. Nor is there any allegation that a different millage rate was employed or that some property was wrongfully excepted from the tax imposed. The sole question is whether a different date of collection of the same tax at the same rate and the same assessment is a violation of the uniformity requirement of art 9, § 3. No Michigan case has addressed this question and few cases with a like factual situation are found in other jurisdictions.

However, in 1981, a member of the Legislature requested the attorney general to address the question. Specifically, the attorney general was asked to issue an opinion as to whether the uniformity clause would be violated if one-half of the school district taxes in that portion of the school district located within a city are due in July, but the school district taxes in that portion of the district located in the several townships are not due until December. The attorney general responded that there would be no violation:

"Turning to your fourth question, the law is settled in Michigan that general *ad valorem* property taxes must be uniformly imposed within the taxing unit as to both rate and mode of assessment. Const 1963, art 9, § 3; *Titus v State Tax Commission,* 374 Mich 476, 480; 132 NW2d 647 (1965). However, uniformity of taxation does not require uniformity in the manner of collecting or enforcing the tax. *Hammett v Kansas City,* 351 Mo

192; 173 SW2d 70 (1943). Some taxpayers may be required to pay their property taxes earlier than other property taxpayers if there is a reasonable basis for such classification. *Rode v Siebe,* 119 Cal 518; 51 P 869 (1898). Here, the collection of one-half of the school taxes in the city portion of the school district in the summer will help to alleviate the need of school districts to pay large amounts of public funds in interest on the money they borrow in anticipation of December school property tax collections. See OAG, 1981-1982, No. 5859, p 60 (March 6, 1981).

"A school district that encompasses portions of one or more cities and one or more townships may, pursuant to 1976 PA 451, *supra,* §§ 1611 and 1612, by board resolution, seek to have one-half the school taxes collected in the summer by each such city and township. In the event the school district proceeds in that manner, any different treatment of school taxpayers would be based, not upon the conduct of the school district, but upon the conduct of the city and each township in exercising its statutory right to approve or disapprove the summer collection of school taxes. The approval of school tax collection in the summer in one governmental unit and the failure to approve such collection in another governmental unit would not result in a violation of Const 1963, art 9, § 3." OAG 1981-1982, No. 5931, p 248, 250 (July 15, 1981).

Cross-appellants strongly challenge the validity of the attorney general's opinion. They claim that it is supported by only two cases, one of which *(Hammett, supra)* is not factually apposite, and the second of which *(Rode, supra),* if decided again, would be decided differently. We acknowledge that *Hammett* is factually distinguishable, but we disagree that *Rode,* a case directly on point, would be decided differently today. Though decided in 1898, *Rode* has never been overruled. We also note that the attorney general's opinion is supported by Michigan case law which to date has defined the constitutional requirement of uniformity as uni-

formity in *rate* and *assessment. Titus v State Tax Comm,* 374 Mich 476; 132 NW2d 647 (1965); *East Grand Rapids School Dist v Kent County Tax Allocation Board,* 415 Mich 381; 330 NW2d 7 (1982).

In addition to *Rode* we find two cases from other jurisdictions holding that a difference in the date of collection of the same tax at the same level of assessment is not a violation of the constitutional guarantee of uniformity. In *State v Jones,* 121 NC 616; 28 SE 347 (1897), a North Carolina statute provided that in the eastern counties taxes were due November 1, but in western counties would not be due until March 15 of the following year. The court held that as long as there was a rational reason for distinguishing the counties involved, the different dates of collection would not invalidate the statue.

"The early marketing of the products of the eastern counties enables the people of those counties to pay their taxes earlier than the people of the western counties can conveniently pay theirs, because of the necessary lateness of the marketing of their chief crop. Such statutes, although local, are still public laws. They affect everybody alike in the localities where they prevail and confer no exemptions or special privileges upon any. There is no violation of the principle of equation of taxation and the state, during the fiscal year, receives its revenue from all of its people under laws operating justly throughout the whole state." 121 NC 619.

In *Edinburg Improvement Ass'n v City of Edinburg,* 191 SW2d 752 (Tex Civ App, 1945), the taxpayer claimed a violation of uniformity because in collecting the tax the city granted other taxpayers wholesale reductions but did not grant plaintiff taxpayer the same reduction. The court held:

"The rule seems to be well established that if the

original assessment rolls are legal in every respect and property has been equally and uniformly assessed, then such rolls will not be rendered illegal and void by the methods used in collecting taxes thereon. We feel that this rule is a proper one. Such a rule does not violate Sec. 1, Art. 8, of the Texas Constitution, Vernon's Ann. St., for all that is there required is that property be taxed in proportion to its value and that taxes be equal and uniform. When taxes have been assessed in an equal and uniform manner this provision of the Constitution has been met. There is nothing in the section which requires that the collection of taxes must be equal and uniform." 191 SW2d 754.

At oral argument before this Court counsel for cross-appellants cited seven "newly discovered" cases in support of the claim that 1982 PA 333 violates the constitutional requirement of uniformity. *Honeywell Information Systems Inc v Maricopa County,* 118 Ariz 171; 575 P2d 801 (1978); *San Bernardino v Way,* 18 Cal 2d 647; 117 P2d 354 (1941); *Schoyer v Comet Oil & Refining Co,* 284 Pa 189; 130 A 413 (1925); *Malone v Williams,* 118 Tenn 390; 103 SW 798 (1907); *Atlanta & Florida R Co v Wright,* 87 Ga 487; 13 SE 578 (1891); *Ewert v Taylor,* 38 SD 124; 160 NW 797 (1916), and *Shipp v Cummings,* 158 Tenn 526; 14 SW2d 747 (1929). At the request of the Court supplemental briefs were submitted on the applicability of the cases cited. After examination of the briefs and opinions, we find the first four cases pertain to matters other than the lack of uniformity as to the date of tax collection.[1] The remaining three cases do hold that

---

[1] Excessive assessment of plaintiff's computer software as compared with assessment of software of other vendors *(Honeywell Information Services);* tax levied in certian geographic units but not in other units *(San Bernardino);* differential treatment for prior lien purposes of a corporation and an individual who had collected tax money and failed to turn it over to the state *(Schoyer);* September 1 made the date of delinquency for tax on corporate stock, but July 1 made the date of delinquency for taxes on all other property *(Malone).* We also find

different dates for collection of the same tax is in itself a violation of the requirement of uniformity. We also acknowledge that *People ex rel Clark v Jarecki,* 363 Ill 180; 1 NE2d 855 (1936), relied upon by cross-appellants, is contrary to the 1945 decision in *Edinburg Improvement Ass'n,* cited by plaintiff.

It is impossible to meaningfully explain or distinguish the difference in holdings in the cases referred to. We can only say that different jurisdictions have come to different conclusions. However, we find *Rode, supra; State v Jones, supra,* and *Edinburg, supra,* to be the better reasoned cases. Further, we find those cases to be more in conformity with *Titus, supra,* which defines uniformity in terms of rate and assessment. Further, not every inequality in the impact of taxation is grounds for reversal. Justice COOLEY himself wrote:

"Now, whether there is injustice in the taxation in every instance in which it can be shown that an individual who has been directly taxed his due proportion is also compelled indirectly to contribute, is a question we have no occasion to discuss. It is sufficient for our purposes to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid because of any such unequal results. It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and, if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions." 1 Cooley on Taxation, 3d ed, p 389, quoted with approval in *Stumpf v Storz,* 156 Mich 228, 234-235; 120 NW 618 (1909).

*Jarvill v City of Eugene,* 289 Or 157; 613 P2d 1 (1980), inapplicable. There owners of downtown business property were being taxed but owners of similar property in other parts of the city were not being taxed.

1982 PA 333 was enacted to correct a serious defect in school financing. The refusal of some local township officials to collect school taxes in the summer had forced an alarmingly large number of districts to borrow money at high interest rates so that they could open in the fall. To correct the problem House Bill 4150, as finally enacted:

"* * * amend[ed] the school code to give local and intermediate districts the option of themselves collecting taxes in the summer or of requesting county treasurers to collect the taxes for them. However, school boards would still have to first request that cities or townships collect the summer taxes, and those municipalities would be twice offered the right to refuse. School Districts would have to pay the entire cost of collecting their taxes." House Legislative Analysis Section, 3d analysis of HB 4150 as enrolled.

Though taxpayers in the district who pay one-half of the tax in July lose the interest on their money until December, the district taxpayers as a whole benefit because the school district avoids borrowing in July. HB 4150 as finally enacted permits a school district to pick and choose in which districts it will request a summer tax. LeRoy Township refused to give plaintiff district a copy of the assessment roll and the per parcel cost of collection in LeRoy Township was in excess of $8. The statute as enacted gives the school district the right to make the determination to collect the tax itself.

Affirmed. No costs, a question of public interest being involved.