LENAWEE INTERMEDIATE SCHOOL DISTRICT v RAISIN
TOWNSHIP SUPERVISOR

Docket No. 83893. Submitted February 6, 1986, at Lansing.—Decided
March 18, 1986.

Plaintiffs, Lenawee Intermediate School District, Adrian Public
Schools and Tecumseh Public Schools, each decided to impose a
summer property tax levy in Raisin Township in 1984 and
subsequent years. Plaintiffs requested Raisin Township to col-
lect their 1984 summer taxes and engaged in negotiations with
the township over payment to the township to cover the tax
collection costs. After receiving a cost estimate from the town-
ship, plaintiffs proceeded to negotiate with the Lenawee County
Treasurer to explore the possibility of employing the county
treasurer as an alternative tax collection agent pursuant to
statute. The county treasurer agreed to collect plaintiffs' tax
levies at a lower estimated collection cost. Plaintiffs thereafter
informed the township of the county treasurer's lower estimate
and offered the township the right to collect their tax levies at
a cost not to exceed the county treasurer's estimate. The
township demurred, contending that it was the only entity
entitled to collect plaintiffs' tax levies, based on a resolution
adopted by the township board. Plaintiffs filed suit against
Louis Rebottaro, the Raisin Township Supervisor and Assessing
Officer, the Raisin Township Board of Trustees, the Lenawee
County Equalization Director and the Lenawee County Trea-
surer seeking: (1) mandamus to compel defendant Rebottaro to
deliver a certified copy of the township's tax assessment rolls to
plaintiffs; (2) the assessment rolls under the Freedom of Infor-
mation Act; (3) a return of funds paid to the county for
improvement of the county's computer system to permit collec-
tion of summer taxes; (4) an injunction to prevent defendant
Rebottaro from sending summer tax bills, allowing the town-
ship to collect the taxes. The circuit court granted plaintiffs'
motion to show cause. However, all parties agreed to have the

Rᴇꜰᴇʀᴇɴᴄᴇs

Am Jur 2d, Schools §§ 78 *et seq.*

Validity of basing public school financing system on local property
taxes. 41 ALR3d 1220.

county treasurer collect the summer taxes and abide by a later court determination as to any damages to any party. The circuit court, John C. Timms, J., entered an order approving collection of plaintiffs' summer taxes by the county treasurer. The circuit court also entered a judgment providing that the township was not the sole collection agent for summer property taxes, notwithstanding the resolution by its board of trustees to the contrary; approving plaintiffs' contract with the county treasurer, finding that negotiations had complied with statutory requirements; and dismissing the suit as to the county equalization director and the county treasurer and plaintiffs' Freedom of Information Act claim. Defendants appealed. *Held:*

1. MCL 380.1612(1) does not permit a township to become the exclusive summer tax collection agent by having passed a resolution prior to January 1, 1983. Such an interpretation would thwart the Legislature's intent to ensure cost effective summer tax collection.

2. The term "negotiate", as used in MCL 380.1613(1), requires more than the abbreviated exchange of collection costs that occurred among the parties in this case. The statute states that a township and school district shall negotiate without specifying how extensive negotiations should be, except that 30 days are allowed after the school district's request to collect taxes, which must be made prior to January 1 of any year. The statute suggests that negotiations with the county treasurer should not be undertaken until the township and school district fail to agree. These negotiations are not to continue after April 1. The Court of Appeals found the negotiations to have fallen short of the standards mentioned. However, the omission of more extended and serious negotiations was not fatal and did not require reversal.

Affirmed.

1. SCHOOLS — TAXATION — SUMMER TAXES.

The statute providing authority for a school district to collect a summer property tax or to request a city or township to collect such taxes did not provide that a township could, by a resolution prior to January 1, 1983, establish itself as the exclusive tax collection agent (MCL 380.1611-380.1613; MSA 15.41611-15.41613).

2. SCHOOLS — TAXATION — SUMMER TAXES.

The statute providing authority for a school district to collect a summer property tax and to negotiate with a township and county treasurer over the cost of tax collection states that a township and school district shall negotiate without specifying

how extensive negotiations should be, except that 30 days are allowed after the school district's request to the township to collect taxes, which must be made prior to January 1 of any year; the statute suggests that negotiations with the county treasurer should not be undertaken until the township and school district fail to agree; negotiations with a township are not to be continued after April 1 (MCL 380.1613[2]; MSA 15.41613[2]).

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Matthew T. Miklave),* for plaintiffs.

*Walker, Watts & Jackson* (by *Mark A. Jackson),* for defendant.

Before: ALLEN, P.J., and Hood and R. C. LIVO,* JJ.

PER CURIAM. Does § 1612 of 1982 PA 333, MCL 380.1612; MSA 15.41612, empower a township, by adopting a resolution prior to January 1, 1983, to establish itself as the exclusive collection agent for a school district's summer taxes? The trial court answered this question "No". Defendants claim the answer should be "Yes" and appeal as of right. What constitutes "negotiate" as that term is used in § 1613 of the same statute? The trial court held that plaintiffs had negotiated in good faith with defendant township as required by § 1613(1). Defendants claim the negotiations were insufficient and appeal as of right. The above questions come to us on plaintiffs' complaint filed June 28, 1984.

Plaintiffs allege that in 1983, each of the three plaintiff school districts resolved separately to impose a summer property tax levy in Raisin Township in 1984 and subsequent years. Prior to January 1, 1984, each plaintiff requested Raisin Township to collect their 1984 summer taxes. Plaintiffs further allege:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"30. Pursuant to the provisions of MCLA 380.1613(1); MSA 15.41613(1), Plaintiffs proceeded to negotiate with Raisin Township with respect to the reasonable expenses for collection of the Plaintiffs' 1984 summer property tax levy that the Township might bill under MCLA 380.1612; MSA 15.41612.

"31. Despite continued negotiations with Raisin Township, no agreement was reached with respect to the reasonable expenses for collection of Plaintiffs' 1984 summer property tax levy that Raisin Township could bill under MCLA 380.1612; MSA 15.41612 for the reason that the Township demanded in excess of $3.76 per parcel for the service."

According to plaintiffs, they next proceeded under § 1613(2) to negotiate with the Lenawee County Treasurer. Plaintiffs alleged that the county treasurer agreed to collect their summer taxes for $2.45 per parcel. It appears that, in reality, the county treasurer agreed to collect the taxes for a flat fee, each school district agreeing to pay part of the total fee. Plaintiffs alleged that on April 5, 1984, they notified Raisin Township of this agreement, giving Raisin Township its statutory right to agree to collect the summer taxes for reasonable expenses not to exceed the amount agreed upon with the county treasurer. Defendant Louis Rebottaro (Supervisor and Assessing Officer of Raisin Township) advised plaintiffs that Raisin Township regarded itself as the only entity entitled to collect the summer taxes, based on a resolution passed by the township board on December 30, 1982, in conformity with § 1612, and advised plaintiffs that legal action would be taken if the county treasurer attempted to collect the taxes. Rebottaro estimated the collection cost would be approximately $3.17 per parcel, having reduced his initial estimate.

Plaintiffs further alleged that defendants re-

fused to give them certified copies of the township assessment rolls despite proper requests under § 1613. As a result, plaintiffs alleged that the county equalization director would not prepare summer tax bills and the county treasurer was unable to collect summer taxes in Raisin Township.

Plaintiffs' complaint had four counts. Count I sought mandamus to compel Rebottaro to deliver a certified copy of the assessment roll to plaintiffs. Count II sought the assessment roll under the Freedom of Information Act. Count III sought a return of funds paid to the county for improvement of the county's computer system to permit collection of summer taxes, on the theory that the computer was not then being used for that purpose. Count IV sought to enjoin Rebottaro from sending summer tax bills, allowing Raisin Township to collect the taxes.

Following the grant of plaintiffs' motion to show cause, the trial court heard arguments on July 2, 1984. Upon realizing that the summer tax billings were already more than a week late and that the summer docket was overcrowded, the trial court and all counsel agreed to permit the county to collect the 1984 summer taxes pending the trial court's decision, at which time damages to any party flowing from the agreement with the county could be determined. The township's agreement was described as reluctant.

Arguments were again heard on October 1, 1984. At that time, counsel for the township asserted that the county treasurer's bid was inadequate, failing to take into account overhead and the cost of sending deferred statements in the fall. As a result, these indirect costs were borne by taxpayers throughout the county rather than just those within the school district. Defendants also alluded

to the existence of a contract between Lenawee County and Raisin Township in which the county agreed not to collect local taxes. If the trial court found that Raisin Township was not the exclusive collection agent by virtue of its December 20, 1982, resolution, defendants asked to amend their pleadings to set forth these claims and an additional claim alleging negotiations in bad faith by plaintiffs.

The trial court issued an opinion on November 28, 1984. After analyzing the legislative history of §§ 1612 and 1613, the court found that the Legislature intended (1) to remedy serious cash flow problems of school districts operating by law on a fiscal year basis not corresponding with usual tax collection times, (2) to provide an orderly, cost-effective method of collecting summer property taxes, and (3) to protect small cities and townships from an undue burden for the cost of collecting taxes at times other than the normal tax collection dates. The trial court found that the Legislature did not intend to secure for townships the absolute right to collect summer taxes but, rather intended that townships not be compelled to collect school taxes but be allowed to do so if the costs were not a burden. To ensure that the costs of collection were not an undue burden upon the school districts, the Legislature gave the districts the opportunity to find other sources of collection at more advantageous rates.

The trial court entered an order on February 19, 1985, approving collection of plaintiffs' summer taxes by the Lenawee County Treasurer. Judgment was entered on March 14, 1985, providing that Raisin Township was not the sole collection agent for summer property taxes, despite its December 30, 1982, resolution; approving plaintiffs' contract with the Lenawee County Treasurer, find-

ing that the negotiations between plaintiffs and defendants complied with §§ 1612 and 1613; and dismissing the suit as to the county equalization director, county treasurer, and Count II of plaintiffs' complaint, without prejudice.

Defendants appeal from this judgment as of right.

The central issue raised on appeal is whether a township may establish itself as the exclusive summer tax collection agent of school taxes by the simple device of adopting a township board resolution prior to January 1, 1983, approving summer tax collection of school taxes. The Raisin Township Board adopted such a resolution on December 30, 1982. Relying mainly on the following emphasized language at the beginning of § 1612, and the legislative history of §§ 1612 and 1613, defendants argue that two mechanisms are available to permit summer tax collection by a township. The first is formal approval of summer tax collection adopted by a township board before January 1, 1983. Adoption of such a resolution, as was enacted in the instant case, preserves a township's status as exclusive tax collecting agent. The second alternative (not in issue here) is with regard to townships which did not give approval before January 1, 1983, but which elect to collect summer taxes.

"(1) *Upon the approval of a township board before January 1, 1983, the board of a school district or intermediate school district may certify* either the total or ½ of the levy of school property taxes on the township portion of the school district or intermediate school district. *If certified, or if approval of the township board is not given before January 1, 1983 and pursuant to section 1613 a township elects or agrees* to collect either the total or ½ of the total school taxes of a school district or intermediate school district located in the

township, the township supervisor before June 30 of each year shall prepare the assessment and tax rolls and furnish these rolls to each affected township treasurer with the supervisor's collection warrant attached thereto." (Emphasis added.) MCL 380.1612(1); MSA 15.41612(1).

Plaintiffs rely on the legislative history of §§ 1612 and 1613 for a contrary interpretation. According to plaintiffs, the Legislature went to considerable lengths to establish a negotiated summer tax collection so that school districts might have not only the benefit of summer collections but also have the benefit of more efficient collection methods from the county. Under plaintiffs' interpretation, school districts should not be required to pay a township's actual collection expenses if summer tax collections can be more economically done by the county treasurer or by the school district itself.

In *Harper Creek School Dist v LeRoy Twp,* 146 Mich App 515; 382 NW2d 172 (1985), an opinion released after briefs were filed in the instant case, this Court was presented with an issue identical to that raised here. Addressing whether townships could become the exclusive summer tax collection agents by adopting a resolution approving summer tax collection prior to January 1, 1983, this Court found that they could not. Three reasons were offered. First, the primary purpose of the amendment was to eliminate the veto which townships had on summer tax collection:

"If, a rural township, by so simple a device as the adoption of a resolution in the two week period between the adoption of the act and January 1, 1983, could remain the exclusive tax collection agency, the main purpose for the bill's enactment would be thwarted. Certainly, that was not what the Legislature intended.

"Second, there is no language in the statute which states that the township or city would retain its status as exclusive agent for tax collection. Surely, if that were the legislative intention, language to such effect would be included. However, no language either directly or indirectly, so states.

"Third, neither the House nor Senate bill analysis interpret the statute as finally enacted as granting a township or city exclusive tax collection status. In our opinion § 1612 and § 1613 should be read together. Section 1613 provides for delineated procedures for the summer tax collection by the school board. Sections 1612 and 1611 provide for summer school tax collection by a school district if approved by the city or township before January 1, 1983, and also provide for tax collection if approval is not given prior to January 1, 1983, and, if pursuant to § 1613, a city or township agrees to collect the summer taxes. Accordingly, we find that the trial court did not err on this issue." *Harper Creek, supra,* pp 549-550.

We agree with *Harper Creek.* Standing alone, § 1612, particularly its emphasized language above, is confusing. Where an ambiguity exists, legislative intent must be looked to. *Treasury Dep't v Campbell,* 107 Mich App 561, 568; 309 NW2d 668 (1981), *lv den* 413 Mich 935 (1982). The history of the bill, particularly in the Senate, where major modifications were adopted and eventually approved by the House, clearly evidences a legislative intent to ensure cost-effective summer tax collection. For this reason, negotiation requirements were added and the townships were given reconsideration rights limited by the costs school districts negotiated with others. It makes no sense for the Legislature to enact a scheme whereby school districts can negotiate for the best possible price, if that scheme can be circumvented by a one sentence resolution passed before January 1, 1983. While the townships can only bill "reasonable"

collection costs, that will not always be the same as the best available price, as for example where a county treasurer is geared to do a more efficient job during the summer.

A reasonable construction must be given to statutory language of doubtful meaning, looking to the purpose served. *Webster v Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948). Construction of the statute to allow yearly negotiations of collection expenses (conduct prohibited under defendant's interpretation) best effectuates the legislative intent as reflected by the Senate amendments. As summarized by the trial court:

"As can be seen, the amendments did not compel the township to collect taxes at a price they could not afford. Neither did the amendment require the school district to pay a higher price for the collection of its taxes than could be obtained elsewhere."

For the foregoing reasons we conclude that the proper answer to the first question raised in the opening sentence of this opinion is "No".

The second question raised is one of first impression and concerns the meaning of the word "negotiate" as it twice appears in the following emphasized language of § 1613(1) and 1613(2).

"Sec 1613(1) By adoption of a resolution of its board before February 1, 1983, or before January 1 in any year thereafter, a school district or intermediate school district may determine to impose a summer property tax levy, which resolution by its terms may be applicable until revoked by the board of the school district or intermediate school district or for levies in any year specified therein. For each year such a resolution applies the school district or intermediate school district that has adopted the resolution shall request, before February 1, 1983 or before January 1 in any year thereafter, each city and township in which it is located

to agree to collect the summer levy in that year of either the total or ½, as specified in the resolution of the school property taxes. * * * Upon receipt of the request, *the governing body of the city or township shall negotiate the reasonable expenses for collection of the school district's or intermediate school district's summer property tax levy* that the city or township may bill under section 1611 or 1612. If a city or township and the school district or intermediate school district reach an agreement within 30 days of the receipt of the district's request for the collection of the district's summer property tax levy, including an agreement to the amount of reasonable expenses that the city or township may bill under section 1611 or 1612, section 1611 shall govern the other terms of a city's agreement and section 1612 shall govern the other terms of a township's agreement.

"(2) If a city or township and the school district or intermediate school district fail to reach an agreement pursuant to subsection (1) for the collection of the summer property tax levy of a school district or intermediate school district subject to subsection (3), *the school district or intermediate school district then may negotiate, until April 1, a proposed agreement with the county treasurer to collect its summer property tax levy* as against property located in that city or township. If a proposed agreement with the county treasurer has not been reached by April 1, the school district or intermediate school district may determine to serve as the property tax collecting unit and collect its own property tax levy against property in that city or township." (Emphasis added.)

Defendants contend that plaintiff school districts did no more than obtain a quick quote following "a one-shop meeting with the township presenting its estimated actual costs" of $3.76 per parcel. Having obtained this figure plaintiffs conducted no further negotiations with the township. According to defendants this was not the "continued negotiations" which defendants claim is required under the statute. Defendants further contend that plaintiffs'

alleged negotiations were in bad faith. In rebuttal, plaintiffs argue that the issue was not properly preserved since defendants' answer to plaintiffs' complaint admitted "negotiations" took place. As noted earlier, the trial court held that plaintiffs had negotiated in good faith.

The issue of good faith and the extent of bargaining mandated by the term "negotiate" as it twice appears in § 1613 was not raised until well after the 1984 summer school taxes were collected. Thus, the issue is tardily raised. Further, assuming, *arguendo,* that error occurred, no evidence of how defendant township may have been damaged was presented. Consequently, remand for a hearing on how defendant township was damaged is denied. Further, we are unable to find evidence that plaintiffs acted in bad faith. After being informed by township representatives that the cost of collection was $3.76 per parcel, plaintiffs consulted with the treasurer of Lenawee County who stated collection could be made by the county for $2.45 per parcel. Plaintiffs then went back to Raisin Township, informing it of this fact, whereupon the township, instead of continuing the dialogue, responded that the issue was closed because the township by its resolution on December 30, 1982, had established itself as the exclusive collection agent for summer taxes. Given these circumstances, we are not persuaded that the trial court erred in ruling that plaintiffs had negotiated in good faith.

Nevertheless, we believe that there is merit in defendant's claim that "negotiate" requires more than the abbreviated exchange of collection costs per parcel, that occurred here. Section 1613(1) states that a township and school district "shall negotiate" without specifying how extensive nego-

tiations should be, except that 30 days are allowed after the school district's request to collect taxes, which must be made before January 1 of any year. Section 1613(2) suggests that negotiations with the county treasurer should not be undertaken until the township and school district fail to agree. These negotiations are not to continue after April 1, at which point the school district can decide to collect on its own and the township may exercise its option to collect on those terms.

The negotiations here seem to fall short of these standards. It appears that plaintiffs took a quote from defendants, and then went directly from that to negotiating with the county treasurer. We opine that something more than this is required if the purpose of the amendments made by the Senate and accepted by the House is to be fulfilled. While we find the omission not fatal or requiring reversal in the instant case, we strongly suggest that, in future proceedings under the statute, more extended and serious negotiations should take place.

Affirmed. No costs, a question of public importance being involved.